DECEMBER 13, 1983

No. A–455.   STEPHENS v. KEMP, SUPERINTENDENT, GEORGIA DIAGNOSTIC AND CLASSIFICATION CENTER.   Application for stay

...ecution of sentence of death set for Wednesday, December ...983, presented to JUSTICE POWELL, and by him referred to ...Court, is granted pending the decision of the United States ...t of Appeals for the Eleventh Circuit in *Spencer* v. *Zant,* 715 ...d 1562 (1983), rehearing en banc granted, *id.,* at 1583, or until ...er order of this Court.

...STICE POWELL, with whom THE CHIEF JUSTICE, JUSTICE ...NQUIST, and JUSTICE O'CONNOR join, dissenting.

...is is another capital case in the now familiar process in which ...pplication for a stay is filed here within the shadow of the date ...time set for execution.

...s summarized by the Court of Appeals the relevant facts are:

> "After escaping from county jail, petitioner was interrupted committing a burglary in Twiggs County by his victim whom he and an accomplice robbed, kidnapped, drove into Bleckley County and brutally killed; he was caught the next morning with the murder weapon in his possession. . . . [H]e confessed and pleaded guilty in Twiggs County to armed robbery, kidnapping with bodily injury, and the theft of a motor vehicle . . . ." 721 F. 2d 1300, 1304 (CA11 1983).

...ury convicted applicant of murder and sentenced him to death ...early 1975. In the nearly nine years that since have tran-...red, Stephens has repetitively moved between state and federal ...rts in pursuing postconviction remedies. His direct and collat-...l attacks have taken his case through the state court system ...ee times and through the federal system twice. This Court ...considered Stephens' case four times excluding his present ...ceedings. See *Zant* v. *Stephens,* 462 U. S. 862 (1983); *Ste-...ns* v. *Zant,* 454 U. S. 1035 (1981); *Stephens* v. *Hopper,* 439 ...S. 991 (1978); *Stephens* v. *Georgia,* 429 U. S. 986 (1976).

...The case before us today commenced with the filing of a federal ...eas petition on November 15, 1983, in the United States Dis-...ct Court for the Middle District of Georgia. The State an-...ered the petition and pleaded that Stephens' petition for a writ ...habeas corpus was an abuse of the writ. On November 16, ...33, the District Court held a hearing on the abuse question and ...e days later, on November 21, 1983, the District Court denied ...ief. 578 F. Supp. 103. It filed a full opinion in which it con-...ded that "the claims raised by petitioner in his successive peti-...n under 28 U. S. C. § 2254 constitute an abuse of the writ under

1027

Rule 9(b), Rules Governing Section 2254 cases in the Un
States District Courts,[1] and are hereby DISMISSED in their
tirety." *Id.*, at 108. On December 9, 1983, a panel of the C
of Appeals for the Eleventh Circuit considered Stephens' er
gency application for a certificate of probable cause to appeal
a stay of execution. Also in a full opinion, the panel found
the District Court had not erred in finding an abuse of the v
721 F. 2d 1300 (1983).

Today, the Court of Appeals denied Stephens' request for a
hearing en banc by an evenly divided vote. 722 F. 2d 627.
six judges who dissented from the denial of rehearing filed a b
opinion expressing the view that Stephens had presented a cl
that warranted a stay of his execution. The dissent reasoned t
Stephens' claim that the Georgia death penalty statute is being
plied in an arbitrary and discriminatory manner is identical to
issue in *Spencer* v. *Zant*, 715 F. 2d 1562 (CA11 1983). The Co
of Appeals—apparently also today—granted a rehearing en b
in *Spencer* and the dissent argued that Stephens should rece
like treatment. It was suggested that Stephens had not abu
the writ with respect to this issue because the statistical study
which he bases his claim did not become available until after
had filed his first federal habeas petition. The fact that 6 of
12 active judges of the Court of Appeals wished to defer action
Stephens' case prompted this Court to grant Stephens' request
a stay. I dissent from this action.

The Court and the judges in dissent in the Court of Appeals
parently misconstrue, as I view it, the posture of this case.
should now be concerned, as was the panel of the Court of A
peals, with whether the District Court erred in its finding th
Stephens is guilty of having abused the writ of habeas corpus.
*Sanders* v. *United States*, 373 U. S. 1 (1963), this Court observ
that the "abuse of the writ" doctrine should be governed by "e
uitable principles." *Id.*, at 17. The Court noted that conside
ation of abuse normally is left to the "discretion of federal tr

---

[1] Rule 9(b) provides:

"Successive petitions. A second or successive petition may be dismissed
the judge finds that it fails to allege new or different grounds for relief a
the prior determination was on the merits or, if new and different grounds a
alleged, the judge finds that the failure of the petitioner to assert tho
grounds in a prior petition constituted an abuse of the writ."

judges. Theirs is the major responsibility for the just and sound administration of the federal collateral remedies, and theirs must be the judgment as to whether a second or successive application shall be denied without consideration of the merits." *Id.*, at 18.

In determining whether the District Court properly exercised its discretion in finding an abuse we should look not to the merits of a petitioner's claims but to the petitioner's reasons for not having raised the claims in his first habeas proceeding. As the Court of Appeals noted, "[t]here is no disagreement among the parties as to the standard applicable to second and subsequent petitions for habeas corpus which present wholly new issues. In order to constitute abuse, presentation of such issues must result from (1) the intentional withholding or intentional abandonment of those issues on the initial petition or (2) inexcusable neglect." 721 F. 2d, at 1303. Under this analysis, it is clear that the District Court properly dismissed Stephens' claim of discriminatory application of the Georgia death penalty without holding an evidentiary hearing on the merits of that claim.

Apparently Stephens concedes that the equal protection issue is being raised for the first time, but he alleges that a 1980 study by a Dr. David Baldus supports the claim that Georgia's death penalty statute is discriminatorily administered against black citizens. As his excuse for not having raised this issue in his first habeas petition, Stephens states that the study was not made available to the public until 1982.

Stephens' argument sidesteps the crucial issue. The State having alleged that he had abused the writ, the burden rests on Stephens to explain why he did not raise the constitutionality of the application of the death penalty statute in his earlier petition. See *Stephens v. Zant*, 631 F. 2d 397 (CA5 1980), modified on rehearing, 648 F. 2d 446 (1981). He did not satisfy this burden in the District Court, in the Court of Appeals, or here. Although it is possible that Stephens did not know about the Baldus study even though it was published in 1982,[2] this does not explain his

---

[2] The Baldus study, relied upon by Stephens, has not been presented to us. It was made in 1980 and apparently has been available at least since 1982. Although characterized by the judges of the Court of Appeals who dissented from the denial of hearing en banc as a "particularized statistical study" claimed to show "intentional race discrimination," no one has suggested that the study focused on this case. A "particularized" showing would require—as I understand it—that there was *intentional* race discrimination in indicting, trying, and convicting Stephens, and presumably in the state appellate and

failure to raise his equal protection claim at all. The availability of such a claim is illustrated by the procedural history in *Spencer* v. *Zant, supra.* In *Spencer,* the defendant raised this constitutional challenge to the application of the Georgia death penalty statute in 1978 in his state habeas proceeding and pursued that claim in his first federal habeas petition. *Id.,* at 1579. See also *Ross* v. *Hopper,* 538 F. Supp. 105, 107 (SD Ga. 1982), rev'd and remanded, 716 F. 2d 1528 (CA11 1983).

Stephens simply failed to explain his failure to raise his claim in his first federal habeas petition, and therefore his case comes squarely within Rule 9(b). In addition, Stephens made no factual showing to the District Court that the statistics contained in the Baldus study supported his allegation of particularized discrimination in the imposition of the death penalty in Georgia.

This Court has now stayed Stephens' execution until the Court of Appeals has decided *Spencer.* In my view, for the reasons noted below, I am satisfied that the Court will conclude that *Spencer*—however it may come out—will not control this case.[3] It should be apparent from the decisions of this Court since *Gregg* v. *Georgia,* 428 U. S. 153 (1976), was decided that claims based merely on general statistics are likely to have little or no merit under statutes such as that in Georgia.

That Stephens is innocent of the brutal, execution-style murder, after kidnaping and robbing his victim, is not seriously argued.

---

state collateral review that several times followed the trial. If the Baldus study is similar to the several studies filed with us in *Sullivan* v. *Wainwright, ante,* p. 109, the statistics in studies of this kind, many of which date as far back as 1948, are merely general statistical surveys that are hardly *particularized* with respect to any alleged "intentional" racial discrimination. Surely, no contention can be made that the entire Georgia judicial system, at all levels, operates to discriminate in all cases. Arguments to this effect may have been directed to the type of statutes addressed in *Furman* v. *Georgia,* 408 U. S. 238 (1972). As our subsequent cases make clear, such arguments cannot be taken seriously under statutes approved in *Gregg* v. *Georgia,* 428 U. S. 153 (1976).

[3] With all respect, I disagree with the judges on the Court of Appeals who say that this case presents the "identical issue" to be considered in *Spencer.* That case is readily distinguishable. As noted above, the discriminatory application of capital punishment—the equal protection issue—*was* raised in the first habeas petition in *Spencer,* and has been pressed at all subsequent stages. In this case, it was not raised until last month. In a fundamental sense, therefore, there could have been no abuse of writ issue in *Spencer.* There are other distinguishing factors, but these need not be stated here.

1032

This is a contest over the application of capital punishment—a punishment repeatedly declared to be constitutional by this Court. In the nearly nine years of repetitive litigation by state and federal courts there has been no suggestion that the death sentence would not be appropriate in this case. Indeed, if on the facts here it was not appropriate, it is not easy to think of a case in which it would be so viewed. Once again, as I indicated at the outset, a typically "last minute" flurry of activity is resulting in additional delay of the imposition of a sentence imposed almost a decade ago. This sort of procedure undermines public confidence in the courts and in the laws we are required to follow.

In conclusion, I reiterate what the Court said in the concluding paragraph in our recent *per curiam* in *Sullivan* v. *Wainwright*, *ante*, at 112: We recognize, of course, as do state and other federal courts, that the death sentence is qualitatively different from all other sentences, and therefore special care is exercised in judicial review. In this case, it is perfectly clear to me that this care *has* been exercised in abundance. Accordingly, I would deny the application for a stay.