798 F.2d 469
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit
Virgil Lee EVANS, Plaintiff-Appellant,
v.
Dale E. FOLTZ, Warden, etc.; et al., Defendants-Appellees.
 No. 84-1782.
 United States Court of Appeals, Sixth Circuit.
 June 5, 1986.
 
 Before CONTIE, Circuit Judge; and PECK and BROWN, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Virgil Lee Evans appeals from the district court's dismissal of his second application for habeas corpus relief filed pursuant to 28 U.S.C.. Sec. 2254.
 
 I.
 
 2
 On October 2, 1967 a grocery store was robbed by two men, and the owner of the store was killed during the course of the robbery. On October 30, 1967, the police received a tip from a secret informant that petitioner had been involved in the robbery. Petitioner was then arrested, and his current place of residence was searched, on October Sec. $e31st. The police did not have arrest or search warrants. The police seized .38 caliber bullets that were of the same manufacture as those used in the robbery. No gun was discovered and the bullets were not otherwise tied to the killing.
 
 
 3
 Prior to petitioner's arrest, Victor Yezbick, the store owner's son and eyewitness of the robbery, identified another man as the person who killed his father. Charles Perkins and David Johnson, other eyewitnesses, also had identified different men as the possible criminal.
 
 
 4
 Several lineups were conducted on November 1, 1967 subsequent to petitioner's arrest. He was represented by counsel at the lineups, but counsel did not take notes and had no independent recollection by the time of trial. Petitioner was fifty-four years old at that time and was positively identified, despite the fact that the men previously identified or described were much younger than he.
 
 
 5
 After his arrest, petitioner's picture was carried in the local newspaper as the individual involved in the robbery and killing. Subsequently, several people identified petitioner as the individual they had seen carrying the gun during the robbery.
 
 
 6
 A preliminary examination was conducted in November 1967, and petitioner's counsel apparently did not raise the issues of illegal search, seizure and arrest. Yezbick's identification of petitioner was introduced, but not Yezbick's prior identifications.
 
 
 7
 Petitioner received a jury trial in February 1968 and was tried with his co-defendant, Richard Tanner, Tanner testified in his own behalf. He admitted that he had been involved in the robbery but identified petitioner as the "trigger man." Petitioner then took the stand. Petitioner testified that Tanner had said that he had been offered a plea of manslaughter if he testified against petitioner. Tanner testified again and denied these accusations. When the jury was excused, Tanner offered a plea of guilty to manslaughter. This was accepted by the court after the prosecutor and police indicated that they were in agreement with the plea, Petitioner was convicted of first-degree murder, but the conviction was overturned by the Michigan Court of Appeals because the jury had not been informed that Tanner had pleaded to manslaughter. People v. Evans, 30 Mich. App. 361 (1971). Subsequent to petitioner's conviction, Tanner apparently signed an affidavit stating that he had lied at the trial and that petitioner had not been involved in the robbery. He later repudiated that affidavit.
 
 
 8
 At petitioner's second jury trial, Tanner was again called to testify. Tanner took the stand, but refused to testify so as not to incriminate himself. The trial court then permitted Tanner's previous testimony to be read to the jury. The jury was informed about Tanner's plea of guilty, and petitioner was able to argue extensively about Tanner's credibility. He was again convicted of first-degree murder and sentenced to life imprisonment on May 4, 1972.
 
 
 9
 This sentence was affirmed on Sec. January 18, 1974 by the Michigan Court of Appeals, and the Michigan Supreme Court denied petitioner's delayed application for leave to appeal on August 4, 1976. People v. Evans, 397 Mich. 802 (1976).
 
 
 10
 Petitioner filed his first writ of habeas corpus application in the United States District Court for the Eastern District of Michigan. Pursuant to a magistrate's report and recommendation, the district court denied petitioner's application on April 30, 1979. This decision was affirmed by this court in an unpublished opinion. Evans v. Anderson, 633 F.2d 214 (6th Cir. 1980). Petitioner's petition for writ of certiorari was denied on January 12, 1981. Evans v. Anderson, 449 U.S. 1090 (1981).
 
 
 11
 Petitioner then filed an application in the state court for leave to file a delayed motion for a new trial, This was denied on January 20,1982. The Michigan Court of Appeals denied petitioner's delayed application for leave to appeal, as did the Michigan Supreme Court. People v. Evans, 417 Mich. 1061 (1983).
 
 
 12
 On August 29, 1983, petitioner filed his second application for writ of habeas corpus, this time in the District Court for the Western District of Michigan. Chief District Judge Miles adopted the magistrate's report and recommendation to deny petitioner's application on July 13, 1984. On September 28, 1984, the district court denied petitioner's request for reconsideration, and on November 7, 1984, the district court issued a certificate of probable cause to appeal. This appeal followed.
 
 II.
 
 13
 A. As an initial matter, the appellee argues that habeas
 
 
 14
 relief should be denied because this second petition
 
 
 15
 constitutes an "abuse of the writ" under Rule 9(b), Rules
 
 
 16
 Governing Section 22Sec. $e54 cases in the United States
 
 
 17
 District Courts. This argument is unavailing because "abuse
 
 
 18
 of the writ" is an affirmative defense which must be
 
 
 19
 pleaded. See Sanders v. United States, 373 U.S. 1, 1011
 
 
 20
 (1963); McLaughlin v. Gabriel, 726 F.2d 7, 10 (1st
 
 
 21
 Cir.1984). Since the government failed to plead this
 
 
 22
 defense, this court may not consider it.
 
 B.
 
 23
 Petitioner raises numerous issues on this appeal; however, the majority of these issues were raised in the petitioner's first application for habeas corpus relief. Although the doctrine of res judicata does not apply to preclude review of habeas petitions raising claims previously litigated, controlling weight may be given to a previous denial of habeas relief when the same ground was presented, the decision was on the merits and the "ends of justice" do not require a reconsideration of the claim's merits. Sanders v. United States, 373 U.S. 1, 15-17 (1963). Inasmuch as the petitioner has not provided this court with new information or legal support regarding his old claims, but merely urges this court to reconsider claims and facts that have been reviewed by numerous tribunals, we are not persuaded that the "ends of justice" require this court to reconsider its previous decision. Therefore, habeas relief will not be granted with respect to the following claims: suppression of evidence at the preliminary hearing; use of perjured testimony;[1] unlawful search and seizure; and denial of the sixth amendment right to confront witnesses. The remaining issue on appeal is whether the petitioner was denied effective assistance of counsel.
 
 
 24
 The petitioner suggests that his first trial counsel, as well as the attorney present at his lineup, rendered ineffective assistance and affected the outcome of his second trial. The petitioner also asserts that second trial counsel was ineffective.
 
 
 25
 The applicable standard for reviewing a claim of ineffective assistance of counsel is set out in Strickland v. Washington, 466 U.S. 668, 687 (1984):
 
 
 26
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
 
 
 27
 A defendant is entitled to "reasonably effective assistance," id. ; Beas v. United States, 491 F.2d 687, 696 (6th Cir. 1974), judged by the case as a whole. United States v. Yelardy, 567 F.2d 863, 866 (6th Cir.), cert. denied, 439 U.S. 842 (1978).
 
 
 28
 We, like the district court are not persuaded by the petitioner's argument. Even if the first trial counsel was ineffective, the remedy for such ineffectiveness is a new trial. Petitioner was granted such a trial, and the fairness and adequacy of the second trial has been thoroughly reviewed by many tribunals. Similarly, the lineup procedures have been addressed and upheld as constitutional, and we are not persuaded by petitioner's ineffective assistance of counsel argument in this regard. Not only do we find that the representation petitioner received at his first trial, as well as his second trial, constitutes reasonably effective assistance of counsel, but we likewise believe that even if there were any flaws in the counsels' representation of petitioner, these flaws did not prejudice the petitioner's defense, Accordingly, we AFFIRm the district court Sec. $eISec. $es denial of habeas relief.
 
 
 
 [1]
 Although this argument was couched in terms of "inherently unreliable" testimony rather than "purjured" testimony, we believe the arguments are essentially the same argument