UNITED STATES of America,
Plaintiff,

v.

Robert Louis BONE, Defendant.

No. 58 Cr 204(3).

United States District Court
E. D. Missouri, E. D.

Feb. 7, 1964.

Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for plaintiff.

James Williamson, St. Louis, Mo., for defendant.

REGAN, District Judge.

This matter is before the Court by reason of the action of the Supreme Court of the United States, 374 U.S. 503, 83 S. Ct. 1879, 10 L.Ed.2d 1045, vacating the judgment of the United States Court of Appeals for the Eighth Circuit, 305 F.2d 772, and remanding the cause to this Court for further consideration in light of Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148.

The petitioner appeared in person and with his retained counsel, James Williamson. The Government was represented by the Assistant District Attorney, William C. Martin. A plenary hearing was granted and the petitioner afforded every opportunity to present evidence to sustain his 2255 motion. The petitioner has two main points: First: That his plea of guilty to the indictment was not voluntarily entered but was induced by rea-

son of the promises made to him by Virgil D. Nidiffer, a postal inspector, and Frederick H. Mayer, Assistant District Attorney. Petitioner's second point is that he was denied the right of allocution under Rule 32 of the Federal Rules of Criminal Procedure. A third matter was brought to the Court's attention by the petitioner during the course of the hearing which was that on or about the 4th day of December, 1953, he had been sent to the Malcolm Bliss Hospital in St. Louis for psychiatric examination.

The petitioner testified in his own behalf and had the testimony of his sister, Mrs. Virginia Thornburgh, as a corroborating witness. The essence of the testimony of the petitioner was that he was arrested in Springfield, Illinois, on July 12, 1958, for escape from the Missouri State Penitentiary. Thereafter, he was transferred from Springfield, Illinois, to jail in St. Louis, Missouri. While in custody in St. Louis, he was visited by Postal Inspector Virgil D. Nidiffer, whom he had previously known and respected. The conversation between petitioner and Nidiffer developed that there was substantial evidence in respect to the robbery of a contract post office and the substance of the conversation was that petitioner had little chance of securing an acquittal. Petitioner further testified that State authorities had information implicating the petitioner in possibly eight felonies. Petitioner testified that he was informed that in view of his prior record and the Second Offense Act in the State of Missouri, it was possible for him to receive a life term on more than one of the State charges. Petitioner further testified that the United States Postal Inspector Nidiffer advised him that the State charges would be dropped if he pleaded guilty to the robbery of the contract post office and was sentenced to twenty-five years imprisonment. Petitioner further testified he had a subsequent conversation with Frederick H. Mayer, the Assistant United States Attorney, whose advice was similar to that offered by Postal Inspector Nidiffer. At no time during these proceedings has the petitioner maintained he was, in fact, innocent of the offense upon which his commitment is based.

The testimony of Mrs. Virginia Thornburgh was that Postal Inspector Virgil D. Nidiffer, who was previously known to her, called on July 14, 1958, and informed her that her brother was then in jail and that she could see him. When she visited the jail, she saw Mr. Nidiffer and discussed her brother's plight with him. Mrs. Thornburgh's testimony, on both direct and cross examination, revealed that she was confused as to the separate State and Federal realms regarding the charges. She understood Mr. Nidiffer to advise that her brother should plead guilty and take a twenty-five year sentence in the Federal Court which would be better than standing trial and possibly receiving a life sentence. Additionally, she was informed by Mr. Nidiffer that petitioner would be placed on parole in sixteen years and any State charges would be dropped if he pleaded guilty in the Federal Court. Her testimony did not suggest an inducement or promise on the part of the Government officials. After the conversation with Nidiffer, she talked with petitioner and encouraged him to plead guilty without, however, ever determining in fact that he was guilty.

Postal Inspector Virgil D. Nidiffer was produced and sworn and testified as follows: He was informed by the police of the City of St. Louis that they had petitioner in custody. Thereafter, Nidiffer appeared at the police station and interviewed the petitioner about the details of the alleged robbery of the contract post office. Subsequently, he was present when the Assistant United States Attorney Frederick H. Mayer talked to the petitioner. This witness further testified that he obtained a statement from the petitioner concerning the robbery of the contract post office. After the petitioner had advised with his sister Mrs. Virginia Thornburgh, his wife Mrs. Anna Bone, and his brother-in-law Mr. Edward Thornburgh, Nidiffer testified that his further conversation with the peti-

tioner revealed that the petitioner preferred to be in Federal custody rather than to stand trial for the state charges. Both Nidiffer and Frederick H. Mayer, Assistant District Attorney, expressed an opinion that if petitioner received a twenty-five year sentence for the robbery of the contract post office, there was little likelihood that the State would proceed against him.

Mr. Edward L. Sprague, the Court appointed attorney, who represented the petitioner at the time of the arraignment and sentence, was subpoenaed and testified. Mr. Sprague's testimony was that he was successful in having the Court dismiss one count of the two count indictment; that he advised the petitioner of the consequences of pleading guilty, and that the sentence to be imposed was mandatory, and that it was twenty-five years. Mr. Sprague testified that he had the impression that the petitioner had made up his mind to plead guilty before any conversation with or advice he received from his Court appointed counsel. Sprague testified at no time did petitioner tell him of any promises made to him by Nidiffer or Mayer.

The records of this Court in this case show that the petitioner was charged in a two count indictment in violation of Section 2114, Title 18 U.S.C.A. The record further shows that counsel was duly appointed for the petitioner and sufficient time was allowed for preparation of defense, and on August 8, 1958, petitioner appeared before the Court in person and by his appointed counsel. Count One of the indictment was dismissed and the petitioner entered a plea of guilty to Count Two, and the cause was passed to August 15, 1958. On August 15, 1958, the petitioner again appeared in person and by counsel and punishment was fixed at twenty-five years imprisonment in custody of the Attorney General. Allocution was granted and judgment and sentence entered.

Wherefore, this Court makes the following conclusions of law:

a. As to the first issue that his plea of guilty to the indictment was not voluntarily entered but was induced by reason of the promises made to him by the Postal Inspector and the Assistant District Attorney, the Court finds that the petitioner made a voluntary choice to plead guilty to the violation of Section 2114, Title 18 U.S.C.A. contained in Count Two of the indictment; that he had done so rather than to stand trial in the State Court for the charges that might have been brought against him there and for his escape from the Missouri State Penitentiary. The Court finds that petitioner did this voluntarily with full knowledge of the charge against him in the Federal Court and the penalty and not by any coercion or duress, nor by reason of any promises made to him by agents of the United States Government.

b. As to petitioner's second point that he was denied allocution under Rule 32 of the Federal Rules of Criminal Procedure, a review of the transcript of the proceedings before the late Honorable Randolph H. Weber reveal the following:

"THE COURT: Mr. Bone, you have heard the statement by the District Attorney relative to this particular offense, are the facts as stated by him correct?

"DEFENDANT BONE: Yes, sir.

"THE COURT: In other words, you did go into the post office and a pistol was used, and money was taken from the man in charge of the post office there?

"DEFENDANT BONE: Yes, sir.

"THE COURT: I believe there was a statement as to a customer also having had some money taken from him. Of course, that is not involved in this particular charge, but did that happen likewise?

"DEFENDANT BONE: Yes, sir.

"THE COURT: Well, of course, as counsel has pointed out, there is not any discretion as far as the Court is concerned as to the punishment. The Court couldn't consider probation under the crime as charged and admitted and under the previous record I have here. He was committed to the Bellefontaine Training School in 1945 for three years. In '49 he received three years for attempt to rob,

then he was in the Federal Court for forging treasury checks and placed on probation, and while on probation he resumed his activities, committed some thefts, stole various checks from mailboxes, he was brought into court and his probation was revoked and he was given a sentence of three years which he served in El Reno. Then in '54 he was sentenced in the Circuit Court for hold-ups and was given twelve years. Then he was a fugitive from the Missouri State Penitentiary at the time this was committed. Is that your previous record?

"DEFENDANT BONE: Yes, sir.

"THE COURT: Even if I had discretion, I would probably be inclined to impose a sentence which would not be lighter than what is prescribed by the statute so far as this case is concerned.

"The record may show I will fix the punishment at imprisonment in the custody of the Attorney General for twenty-five years. Is there any legal cause why sentence and judgment should not be entered?

"MR. SPRAGUE: None, Your Honor.

"THE COURT: The record may then show sentence and judgment of imprisonment in the custody of the Attorney General for twenty-five years. The defendant may stand committed."

■ The Court finds that allocution was granted as provided for under Rule 32 of the Federal Rules of Criminal Procedure. All of the questions were directed to the petitioner. He was given an opportunity to comment on the facts as presented by the United States Attorney, on his previous record, and on the sentence that would be imposed. It has not been suggested that the petitioner had any remarks he might have made in mitigation of the sentence. No circumstances could be shown to mitigate the sentence which was mandatory upon the plea.

■ As to the third point which developed during trial that the petitioner had been examined at the Malcolm Bliss Hospital, it was stipulated by James Williamson, the retained counsel of the petitioner, that the Court might consider at the time of its ruling on petitioner's 2255 motion the hospital record of the Malcolm Bliss Hospital. This record reveals that on the 25th day of November, 1953, the Circuit Court of the City of St. Louis ordered the psychiatric examination of Robert Louis Bone who was a defendant in the State Court charged with robbery in the first degree with a deadly and dangerous weapon. Thereafter, he was transferred to the Malcolm Bliss Hospital and a complete psychiatric examination and evaluation was made, all of which is summed up in a letter dated December 11, 1953, addressed to:

"The Honorable Eugene J. Sartorius,
"Circuit Court for Criminal Causes
"Assignment Division No. 1
"Municipal Courts Building
"St. Louis, Missouri.

"Dear Sir:

64613
Re: Robert L. Bone

"Robert L. Bone was admitted to Malcolm Bliss Hospital on December 4, 1953, by order of your Court for mental examination. Our studies here show that he knows the nature of his actions and can judge right from wrong.

"He has a mild degree of mental deficiency which is not sufficient to account for his behavioral problems. He manifests a sociopathic personality disturbance, which we consider as the basis of his criminal behavior. The diagnosis of the staff here is mental deficiency, mild with a sociopathic personality disorder.

"He is being returned to the City Jail today.

"Respectfully yours,
"(signed) Jimmie Coker Brockman, M. D.,
"Resident Psychiatrist."

At the hearing on the pending motion, petitioner appeared oriented and knowledgeable regarding his situation. There has been no showing that he was in any way incompetent at the time of the plea.

The Court finds that the petitioner had no mental disability that prevented his understanding the nature of the charge, the punishment that could and was made, and further that he was capable of aiding in his own defense.

In conclusion, it is the opinion of this Court that the motion of the petitioner Robert Louis Bone to vacate the judgment, sentence and commitment in Case No. 58 CR 204(3) should be denied.