**James MESSER, Jr., Appellant,**

v.

**Ralph KEMP, Warden, Georgia Diagnostic and Classification Center, Respondent.**

**Civ. A. No. C86–173R.**

United States District Court,
N.D. Georgia,
Rome Division.

July 7, 1986.

---

Howard J. Manchel, Atlanta, Ga., for appellant.

Mary Beth Westmoreland, Asst. Atty. Gen., Atlanta, Ga., for respondent.

## ORDER

ROBERT H. HALL, District Judge.

James Messer, Jr., who is scheduled to be executed before July 9, 1986, petitions this court for a writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. This court has stayed petitioner's execution pending a full review of the issues raised by the petition. For the reasons set forth herein, the court DENIES prisoner's petition, and accordingly lifts the stay of execution.

## FACTS

Petitioner, James E. Messer, Jr., was indicted by the grand jury of Polk County, Georgia, during the November Term, 1979, for kidnapping with bodily injury and for the murder of Rhonda Tanner. A special plea of insanity was filed on behalf of the petitioner. After two subsequent state sponsored psychiatric examinations established that petitioner was mentally competent to stand trial, the special plea of insanity was withdrawn. At his trial petitioner pleaded not quilty. Following a trial by jury on February 7, 1980, petitioner was found guilty on both charges and sentenced to death for both offenses. Petitioner received the death penalty for murder after the jury found the presence of two statutory aggravating circumstances, (1) that the murder was committed during the course of another capital felony, the kidnapping with bodily injury, and (2) that the murder was outrageously and wantonly vile, horrible or inhuman in that it involved torture to the victim. The jury found one aggravating circumstance with respect to the kidnapping with bodily injury charge, that the crime was outrageously or wantonly vile, horrible or inhuman in that it involved aggravated battery and torture to the victim. The death sentence was im-

posed on February 8, 1980. Petitioner's motion for a new trial was denied after hearing on May 20, 1980.

On direct appeal, the petitioner raised six issues, including denial of the motion for an independent psychiatric examination. The Supreme Court of Georgia considered these allegations and also conducted a sentence review, finding that the evidence supported the verdict, that the sentence was not imposed under passion or prejudice, that the evidence supported the aggravating circumstances, that the death penalty was not disproportionate and that the charge at the sentencing phase was proper. Thus, the court affirmed both the convictions and the sentences. *Messer v. State,* 247 Ga. 316, 276 S.E.2d 15 (1981). A motion for rehearing was denied on March 18, 1981.

Petitioner subsequently filed a petition for a writ of certiorari in the Supreme Court of the United States challenging the denial of an independent psychiatric examination. This petition was denied on October 5, 1981. *Messer v. Georgia,* 454 U.S. 882, 102 S.Ct. 367, 70 L.Ed.2d 193 (1981).

Petitioner then filed a petition for habeas corpus relief in the Superior Court of Butts County, Georgia, on January 5, 1982. On or about January 25, 1982, the petitioner filed an amendment to the petition and a brief in support. Petitioner did not raise the denial of the motion for independent psychiatric examination. The state habeas corpus court denied relief without a hearing on February 23, 1982. Petitioner's Application for Certificate of Probable Cause to Appeal was denied on April 20, 1982. Subsequently, a petition for a writ of certiorari was filed in which the petitioner challenged the admission of his confession and asserted that he was arrested without probable cause. Certiorari was denied on October 4, 1982. *Messer v. Zant,* 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148, *rehng. den., sub. nom, Cape v. Zant,* 459 U.S. 1059, 103 S.Ct. 479, 74 L.Ed.2d 626 (1982).

Petitioner filed an application for habeas corpus relief in the United States District Court for the Northern District of Georgia, Rome Division, on November 23, 1982. In that petition, the petitioner raised the denial by the trial court of the motion for an independent psychiatric examination and funds for an expert.

The case was transferred to the Atlanta Division and an evidentiary hearing was held before United States Magistrate Joel M. Feldman on August 5, 1983. On February 1, 1984, the magistrate entered a report and recommendation recommending that relief be denied as to the conviction, but suggesting that relief be granted as to the sentencing phase finding that counsel was ineffective during the closing argument at the sentencing phase. On March 30, 1984, this court entered an order adopting all portions of the magistrate's report and recommendation except that portion dealing with the effectiveness of counsel at the sentencing phase. This court concluded that petitioner had failed to show any prejudice resulting from this allegation. *Messer v. Francis,* No. C82–419A (N.D.Ga. March 30, 1984) (Hall, J.). This court also ruled on certain other allegations not addressed by the magistrate and denied a certificate for probable cause to appeal. *Id.* The Eleventh Circuit Court of Appeals granted the certificate on June 1, 1984.

Subsequently, a panel of the Eleventh Circuit Court of Appeals affirmed this court's decision denying habeas corpus relief in an opinion dated April 30, 1985. *Messer v. Kemp,* 760 F.2d 1080 (11th Cir. 1985). Only three issues were raised on appeal; the denial of the motion for a mistrial, the allegation of ineffective assistance of counsel and the question of whether jury instructions were correct on the kidnapping with bodily injury charge. A petition for rehearing *en banc* was denied on August 23, 1985. Petitioner then filed a petition for a writ of certiorari in the Supreme Court of the United States which was denied on January 21, 1986. *Messer v. Kemp,* —— U.S. ——, 106 S.Ct. 864, 88 L.Ed.2d 902 (1986).

On June 17, 1986, an order was signed setting a new execution time frame beginning at noon on July 2, 1986, and ending at

noon on July 9, 1986. Petitioner filed a petition for habeas corpus relief in the Superior Court of Butts County, Georgia on June 26, 1986, raising five allegations, including the allegation that he had been denied funds for an independent psychiatric examination and that the death penalty was applied in a discriminatory fashion. No evidence was proffered to the state habeas corpus court by the petitioner, nor did petitioner assert that any was available.

On June 27, 1986, respondent filed a motion to dismiss the petition. At 8:00 a.m. on that day, a hearing was held before the Honorable Hal Craig on the petition, request for a stay and motion to dismiss. At 3:10 p.m. on that date, an order was filed denying the stay, dismissing the petition as successive as to four counts and finding the remaining count to be without merit. Petitioner filed a notice of appeal and an application for certificate of probable cause to appeal that afternoon. On Monday morning, June 30, 1986, petitioner filed an amendment to his application for a certificate of probable cause. Respondent filed a response to the application. On that same date, the Supreme Court of Georgia denied the application for a certificate of probable cause to appeal. Petitioner then filed the current petition with this court on July 1, 1986. This court orally granted petitioner's motion to proceed in forma pauperis.

DISCUSSION

■ Petitioner contends that he was convicted and sentenced to death in violation of the Georgia Constitution and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Petitioner argues that under *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) he was denied funds to have an independent psychiatrist to aid in his defense, in violation of his rights under the Fourteenth Amendment. (Petition for Writ of Habeas Corpus custody ("Petition")). Petitioner also argues that the imposition of the death penalty violates the Eighth Amendment's prohibition of cruel and unusual punishment because it will be applied in a racially discriminatory manner. As an initial matter, the court finds that petitioner's claim that imposition of the death penalty violates the Eighth Amendment's prohibition of cruel and unusual punishment because it will be applied in a racially discriminatory manner, is without merit and cannot provide a basis for the relief sought. *McCleskey v. Kemp,* 753 F.2d 877 (11th Cir.1985) (en banc).[1]

Respondent pleads abuse of the writ under Rule 9(b) of the Rules Governing § 2254 cases. Specifically, respondent asserts that all claims raised in the instant petition have been raised in a prior federal habeas corpus petition. (Respondent's Answer/Response, "Response").[2] Therefore, to determine whether any ground for relief is properly before this court, the court must consider whether petitioner has abused the writ in bringing a successive petition.

■ This court holds that petitioner abused the writ in raising his *Ake* (denial of independent psychiatric evaluation) claim in his second habeas petition. Rule 9(b) of the Rules Governing 28 U.S.C. § 2254 provides:

A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and if the prior determination was on the merits, or if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constitutes an abuse of the writ.

---

**1.** The United States Supreme Court granted certiorari in *McCleskey v. Kemp,* No. — U.S. —, 106 S.Ct. 3331, 92 L.Ed.2d 737 (1986), to consider whether the death penalty is being applied in a racially discriminatory manner. This court feels the grant of certiorari should not alter the court's denial of the petition in the case at bar.

**2.** In its Response, respondent pleads exhaustion contending that all the grounds raised in the instant petition have not been previously raised in state proceedings. (Response at 2) However, respondent does not pursue this contention in its brief and the court does not feel compelled to discuss its merits.

28 U.S.C. § 2254 (1977). However, a petitioner may rebut the state's contention that he abused the writ in a successive petition in one of two ways:

"(a) If the ground was previously addressed in a federal habeas corpus proceeding, the petitioner must demonstrate that the decision was not on the merits, or the *ends of justice would be served by reconsideration on the merits* ...

(b) If the ground was not previously presented in a federal habeas corpus proceeding, the petitioner must demonstrate the failure to present the ground in the prior proceeding was neither the result of an intentional abandonment or withholding nor the product of inexcusable neglect." *Witt v. Wainwright*, 755 F.2d 1396, 1397 (11th Cir.1985), *rev'd on other grounds* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (emphasis supplied) *see also, Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

In the instant case, it is not disputed that petitioner properly raised the claim of the unconstitutional denial of an independent psychiatric evaluation in his first habeas petition.[3]

Because this court finds that petitioner's denial of independent psychiatric evaluation claim constitutes a successive petition that has been decided on the merits in the previous habeas corpus proceeding, the court now turns to whether the "ends of justice" would be served by a reconsideration of this claim. Petitioner contends that reconsideration is required by an intervening change in the law applicable to the constitutionality of denying petitioner's request for an independent psychiatric evaluation for the purpose of preparing a defense of insanity. This court cannot agree.

Respondent urges that the Supreme Court's recent decision in *Kuhlmann v. Wilson*, —— U.S. ——, 106 S.Ct. 2616, 2626, 91 L.Ed.2d 364 (1986) addressing the "ends of justice" standard, controls the instant case.[4] *Kuhlmann* involved a Sixth

---

**3.** Respondent raised at oral argument a conceptually distinct problem arising from the posture of this case. As the court holds, petitioner properly stated his denial of independent psychiatric evaluation as a ground for relief in his first habeas petition. However, he did not renew this argument on appeal. Respondent argues petitioner, thus, intentionally abandoned his claim.

The "intentional abandonment or withholding" doctrine applies on a second habeas only where petitioner has not "previously presented [the ground for relief] in a federal habeas corpus proceeding." *Witt; supra; Cf. Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

Here, petitioner did present this ground in the first habeas petition, and this court considered and rejected his arguments. *Messer v. Francis*, No. C82–419R (March 30, 1984) (Hall, J.) (unpublished opinion). *aff'd Messer v. Kemp*, 760 F.2d 1080 (11th Cir.1985) *reh denied*, —— U.S. ——, 106 S.Ct. 864, 88 L.Ed.2d 902 (1986).

Once this ground was raised in the first habeas petition, as required under *Witt* and *Sanders supra*, no abandonment for abuse of writ purposes could occur. *Fleming v. Kemp*, 794 F.2d 1478 (11th Cir.1986). Additionally, there is no evidence that the failure of petitioner to brief the issue on appeal was to "vex, harass, or delay" *Sanders supra* 373 U.S. at 18, 83 S.Ct. at 1078. Therefore, any contention that petitioner abused the writ by this "abandonment" is groundless.

**4.** *Kuhlmann* involved a situation in which defendant, after arraignment on charges of a 1970 robbery and murder, was confined in a cell with another prisoner who had previously agreed to act as a police informant. The defendant made incriminating statements, and the informant reported them to the police. Prior to trial, defendant moved to suppress the statements on the ground that they were obtained in violation of his Sixth Amendment right to counsel. The trial court denied the motion finding that the informant had obeyed a police officer's instructions not to question defendant about the crimes and that defendant's statements were "spontaneous" and "unsolicited". In 1972, defendant was convicted for common law murder and felonious possession of a weapon. The State Appellate Court affirmed. In 1973, defendant sought federal habeas corpus relief, asserting a Sixth Amendment violation based on the same grounds. The district court denied the writ, and the Court of Appeals affirmed. After the 1980 decision in *United States v. Henry*, 447 U.S. 264 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), which applied the "deliberately elicited" test of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) to suppress statements made to a paid jailhouse informant, defendant unsuccessfully sought to have his conviction vacated by the state courts. In 1982, defendant filed a habeas corpus petition in district court, again raising the Sixth Amendment claim. The district court denied relief, but the court of appeals reversed.

Amendment claim of denial of right to counsel based on court's denial of motion to suppress statements made to a jailhouse informant. The prisoner, in a successive petition for a writ, claimed that the change in the law occasioned by the Supreme Court's decision in *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) mandated reconsideration of the Sixth Amendment claim. An opinion written by Justice Powell and joined in pertinent part by Chief Justice Burger, Justices Rehnquist and O'Connor, stated that:

> In light of the historic purpose of habeas corpus and the interest implicated by successive petitions for federal habeas relief from a state conviction, we conclude that "the ends of justice" require federal courts to entertain such petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence.

*Kuhlmann v. Wilson,* 106 S.Ct. at 2626. The plurality stated that its purpose in requiring a "colorable showing of factual innocence" was to provide a specific guideline for district courts to use in resolving the "ends of justice" issue.

For several reasons, this court finds that *Kuhlmann* is not controlling precedent with respect to the "ends of justice" determination. First, the precedential value of a four justice opinion is highly suspect.[5] Simply stated, a position that does not garner the votes of at least five justices cannot be binding precedent where there is a contrary body of Supreme Court decisions. In *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), the Supreme Court restated the familiar notion that a four justice plurality opinion has no binding effect.[6]

Second, this court's belief that a majority of the court rejected the notion that the "colorable showing of factual innocence" is the only element to consider in deciding the "ends of justice" issue is supported by Justice Stevens' dissent. Justice Stevens explicitly rejected Justice Powell's "single factor" approach, contending that whether the petitioner has advanced a colorable claim of innocence is but "one of the facts that may be properly considered." *Id.* (Stevens, J. dissenting). Justices Stevens, Brennan and Marshall explicitly endorsed the court's traditional approach under *Sanders, supra* that the decision whether to hear a successive petition was committed "to the sound discretion of federal trial judges." *Sanders,* 373 U.S. at 18, 83 S.Ct. at 1079. Thus, based on a mere plurality of four votes, *Kuhlmann* does not change the basic approach of *Sanders.*[7]

**5.** Powell, J. announced the judgment of the court. Burger CJ., Rehinquist and O'Connor, JJ., joined Powell's discussion of the "ends of justice" test. Brennan, J. dissented joined by Marshall, J. Stevens, J. dissented separately. White and Blackmun, JJ., did not join Powell's "ends of justice" discussion.

**6.** The most commonly recognized theory on dealing with four vote pluralities is the statement in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) that "when a fragmented court decides a case and no single rationale explaining the result enjoys the assent of five justices, 'the holding of the court may be viewed as that position taken by those members who concurred in the judgment on the narrowest grounds.'" See Note, *The Precedential Value of Supreme Court Plurality Decisions,* 80 Columbia L.Rev. 756 (1980) for a fuller discussion of the "narrowest grounds" approach.

**7.** If it is truly apparent that a "single factor" test is needed for the policy reasons set forth in Justice Powell's *Kuhlmann* opinion, this court

feels the better analysis would be to extend the test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), used in evaluating effectiveness of counsel issues on original habeas petitions, to the "ends of justice" question on successive petitions. This test would contemplate allowing reconsideration where there is a "reasonable probability that, but for [the denial of an independent psychiatric evaluation in preparation of an insanity defense that would have been a significant factor a trial], the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Restated simply, if the denial of the independent psychiatric evaluation in preparation for trial could reasonably have resulted in a different outcome, then reconsideration should be granted. This test has also been used as the test for materiality of exculpatory information not disclosed to the defense by the prosecution, *United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976), and in the test for materiality of testimony made unavailable to the defense by government deportation of a

Petitioner urged at oral argument that the recently decided case of *Fleming v. Kemp*, 794 F.2d 1478 (11th Cir.1986) should control the outcome of the case. In *Fleming* the Eleventh Circuit, without deciding the merits of that prisoner's habeas petition, stayed the scheduled execution pending further order of that court. *Id.* In deciding that the prisoner did not abuse the writ in raising an identical claim on a successive habeas petition, the circuit court reached the question of whether the "ends of justice" would be served by a second review of the claim. *Id.* The court reiterated that the "ends of justice" are defined by objective factors, such as whether there was a full and fair hearing on the original petition, or whether there was an intervening change in the facts of the case or the applicable law. *Id.* There, the alleged intervening change in the applicable law was the Supreme Court's decision in *Batson v. Kentucky*, —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (juror exclusion based on race held unconstitutional).

The *Fleming* court, however, did not discuss the Supreme Court's ruling in *Kuhlmann*, which was handed down the day before. Because the circuit did not consider and discuss the *Kuhlmann* case, this court feels *Fleming*'s precedential value is questionable with respect to the "ends of justice" determination.

Additionally, *Fleming* contains no discussion of the many other objective factors courts consider when making the "ends of justice" determination. In *Fleming*, the fact that there was an intervening change in the applicable law alone was held to be enough to grant reconsideration of the petition. The *Fleming* court failed to discuss any other factor. In essence, that court proposed its own "single factor" approach,

and ignored the *Sanders* line of cases which leave it to the sound discretion of the district courts to weigh these factors. No opinion in *Kuhlmann* supports the position that an intervening change in the applicable law standing alone requires reconsideration of a successive petition.

Although this court finds the *Kuhlmann* decision does not control the outcome of this case, this court cannot ignore the fact that four justices supported an opinion that would make a "colorable showing of factual innocence" the sole factor to consider when deciding the "ends of justice" question. Thus, to the extent the *Fleming* court did not explicitly consider whether the petitioner there had made a "colorable showing of factual innocence in making its "ends of justice" determination, this court feels *Fleming* is not controlling.

■ This court finds that neither *Kuhlmann* nor *Fleming* essentially alter the traditional approach to the "ends of justice" test set forth in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). The burden lies with the petitioner to demonstrate that a reconsideration would serve the ends of justice. *Sanders*, 373 U.S. at 15–19, 83 S.Ct. at 1077–79; *Bass v. Wainwright*, 675 F.2d 1204 (11th Cir.1982). In *Sanders* the court held:

> If factual issues are involved, the applicant is entitled to a new hearing upon showing that the evidentiary hearing on the prior application was not full and fair ... If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior

witness, *United States v. Vallenzuela-Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

This test would achieve the goals desired by Justice Powell and the three justices that joined his *Kuhlmann* opinion by (1) providing a clear rule for the district courts to apply, and (2) denying reconsideration to prisoners who have no chance of prevailing at retrial because "guilt is conceded or plain" *Kuhlmann*, 106 S.Ct. at

2626. The proposed test would also avoid problems where the "colorable showing of factual innocence" test does not logically apply. One example of these problems arises where a prisoner alleges constitutional error in the sentencing phase of a capital case. Guilt or innocence seems to be irrelevant in that context. *See Kuhlmann*, 106 S.Ct. p. 2622, n. 7 (Brennan, J. dissenting).

application. *Id.* at 16–17, 83 S.Ct. at 1078.

The court went on to qualify its remarks in the following ways:

*First,* the foregoing enumeration is not intended to be exhaustive; the test is "the ends of justice" and it cannot be too finely particularized. *Second,* the burden is on the applicant to show that, although the ground of the new application was determined against him on the merits on a prior application, the ends of justice would be served by a redetermination of the ground. *Id.* at 17, 83 S.Ct. at 1078.

The Eleventh Circuit has elucidated the *Sanders* holding stating that "the 'ends of justice' are defined by objective factors, such as whether there was a full and fair hearing on the original petition or whether there was an intervening change of the facts of the case or the applicable law." *Witt v. Wainwright,* 755 F.2d 1396, 1397 (11th Cir.1985). Briefly stated then, the law of *Sanders* leaves the decision to grant reconsideration of a successive petition to the sound discretion of the district court which may properly consider several objective factors in reaching this decision. Courts have considered the following factors proper in making the "ends of justice" determination.

First, the plurality opinion in *Kuhlmann* indicates that four justices were willing to adopt the "colorable showing of factual innocence" test as the sole factor in making the "ends of justice" inquiry. Indeed, Justice Stevens' dissent acknowledges this test as "one of the facts that may properly be considered," although he did not feel it was an essential element to the reconsideration of a successive petition. *Kuhlmann* (Stevens, J. dissenting). Justice Stevens went on to conclude that the district court did not abuse its discretion because *Kuhlmann* was "one of those close cases in which the district court could have properly decided that a second review of the same

contention was not required despite the intervening decision...." *Id.* Thus, at a minimum, five justices agree that whether petitioner has made a colorable showing of factual innocence is properly a factor to consider in making the "ends of justice" determination.

In the instant case, petitioner has made no such showing. Petitioner's counsel declined this court's invitation to make such a showing, arguing alternatively that the mere allegation that petitioner was insane established a "colorable showing", or that petitioner's claim regarding the "ends of justice" issue was established by other factors under *Sanders* such as an intervening change in the applicable law. (Transcript of oral argument on petition for habeas corpus p. 8–12, "Transcript"). When asked by this court whether petitioner had any claim of factual innocence, petitioner's counsel responded "there is a claim of innocence here. It's not a claim of factual innocence, it's a claim of legal innocence by reason of insanity." (Transcript at 10) Thus, by his own words counsel disavowed any showing that could establish the existence of this factor. Where, as here, both this court and the Eleventh Circuit in reviewing petitioner's first petition explicitly stated that the evidence of petitioner's guilt was "overwhelming", without making any showing of factual innocence whatsoever, petitioner has not made out a "colorable showing.[8] *Messer v. Francis,* No. C82–419R at 3 (N.D.Ga. March 30, 1984) (Hall, J. unpublished opinion) *aff'd sub nom, Messer v. Kemp,* 760 F.2d 1080, 1084 (11th Cir.1985).

Petitioner contends that other countervailing objective factors demonstrate that the "ends of justice" would be served by granting reconsideration. Namely, petitioner contends that the intervening change in law announced in *Ake supra* requires such a result. This court disagrees. Even assuming *arguendo* (1) that *Ake* did change the law relevant to the constitution-

---

**8.** In *Kuhlmann,* the plurality noted the circuit below stated that the evidence of prisoner's guilt in that case "was nearly overwhelming." *Kuhl-*

*mann,* 106 S.Ct. at 2628. Here, the Eleventh Circuit stated, "[i]f ever there was an open and shut case, this is it ..."

ality of denying this petitioner an independent psychiatric evaluation for the preparation of his defense, and (2) that *Ake* applies retroactively to this petitioner on collateral review, this court feels an intervening change in law alone is insufficient to warrant reconsideration. In light of the plurality opinion in *Kuhlmann* that indicates the importance of the "colorable showing of factual innocence" factor, and three dissents in that case that emphasize the multiplicity of factors that may properly be considered, this court feels it would be inappropriate to give the change in intervening law alone controlling weight.[9]

The petitioner's failure to appeal an adverse ruling on his prior habeas petition is a factor to be considered in the "ends of justice" calculus of the *Sanders* test. *Johnson v. Wainwright,* 702 F.2d 909 (11th Cir.1983); *Bass v. Wainwright,* 675 F.2d 1204 (11th Cir.1982). Here, this court ruled on the merits of Messer's first petition on March 30, 1984. The court explicitly considered and denied relief on the denial of an independent psychiatric evaluation along with seven other grounds. *Messer v. Francis, supra* at 15. The *Ake* decision, the intervening change in law argued by petitioner as grounds for reconsideration of this opinion, was decided February 26, 1985. *Ake supra.* Petitioner on appeal from this court's denial of relief on his first petition did not raise *Ake* as a ground of appeal. This court has already ruled that this omission does not amount to "abandonment" of the claim, but as a *factor to be* considered under the ends of justice calculus it does weigh against petitioner. *See* discussion *supra.*

There are other factors that may be properly considered by this court, which are relevant to whether the ends of justice would be served by allowing reconsideration of a prisoner's second petition. The fact that a man's life is at stake is a

weighty factor that this court fully appreciates. *Potts v. Zant,* 638 F.2d 727, 752 (11th Cir.1981). Also relevant is possible prejudice to the state e.g., here whether the state has access to witnesses that would be necessary to rebut petitioner's claim of insanity at the time of the offense. *Id.* Finality, here serves the state's legitimate punitive interests. When a prisoner is freed on a successive petition, often many years after the crime, the state may be unable successfully to retry him. *Peyton v. Rowe,* 391 U.S. 54, 62, 88 S.Ct. 1549, 1553, 20 L.Ed.2d 426 (1968) *see Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The state has offered no showing to support such a conclusion on this case. However, the litany of direct appeals and collateral attack in this case, demonstrates the point. *See* facts *supra.*

■ After weighing all the above-mentioned factors and carefully examining the record in this case, the court feels the "ends of justice" would not be served by reaching the merits of the successive petition. First, petitioner has chosen to make no showing of factual innocence. Thus, petitioner fails to satisfy this factor. It is the concern of at least five members of the Supreme Court that a "colorable showing of factual innocence" be one of the factors properly considered by a district court in ruling on reconsideration of a successive petition. Although this court assumes *arguendo* that *Ake supra* is an intervening change in the law applicable to the facts of petitioner's case, and that it applies retroactively to this petitioner, standing alone such is insufficient to require reconsideration. Where (1) petitioner has made no showing of factual innocence, (2) the evidence of petitioner's guilt was found to be "overwhelming" by both this court and the circuit court, and (3) petitioner had the opportunity, yet failed to raise the *Ake* ground of relief on appeal from this court's

---

**9.** Before *Kuhlmann,* a change in applicable law seemed to guarantee reconsideration in the Eleventh Circuit. This court is aware of no published case regarding successive petitioners in which the Eleventh Circuit has ever denied reconsideration where there was an intervening

change in law which applied retroactively to ɐ prisoner. *Cf Young v. Kemp,* 758 F.2d 514 (11th Cir.1985); *Smith v. Kemp,* 715 F.2d 1459 (11th Cir.1983); *Fleming supra* (granting reconsideration where intervening change applicable law occurred.)

order denying petitioner's first petition, the court feels the "ends of justice" do not require reconsideration.

## CONCLUSION

In conclusion, the court considers this petition for a writ of habeas corpus to be a successive petition, and because this court feels the "ends of justice" would not be served by reconsideration, this court accordingly DENIES petitioner a writ of habeas corpus. The stay of execution ordered by this court is hereby lifted effective at noon July 8, 1986.