**Van Roosevelt SOLOMON, Petitioner,**

v.

**Ralph KEMP, Warden, Georgia Diagnostic and Classification Center, Respondent.**

Civ. A. No. C83–908A.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 11, 1983.

Robert B. McNeese, Jr., Atlanta, Ga., for petitioner.

Michael J. Bowers, Atty. Gen., and Susan V. Boleyn, Asst. Atty. Gen., State of Ga., Atlanta, Ga., for respondent.

### ORDER

ROBERT H. HALL, District Judge.

Van Roosevelt Solomon was convicted of murder and sentenced to death on September 29, 1979, in Cobb County, Georgia. The case then proceeded for approximately four years through the Georgia judicial system and certiorari process to the Supreme Court of the United States. On May 6, 1983, Solomon petitioned this court for a writ of habeas corpus to relieve him from the sentence of death. On that same day, this court granted a stay of execution pending a decision on the merits of the petition. After the filing of briefs and a hearing, this

court issued an order on September 6, 1983,[1] denying the application for a writ of habeas corpus and lifting the stay of execution. On September 16, 1983, petitioner filed a Motion to Amend Judgment which was denied on October 11, 1983.

On October 11, 1983, petitioner filed a timely request for a certificate of probable cause to appeal the case pursuant to 28 U.S.C. § 2253 and a motion for leave to proceed *in forma pauperis.* There is no appeal of right from an order of this court denying a writ of habeas corpus involving a state prisoner. In order for the petitioner to obtain the right to appeal, a judge of this court or the Eleventh Circuit Court of Appeals must issue a certificate of probable cause.[2]

What is the purpose of an appeal? The reason for an appeal "is not because the appellate judges necessarily have more wisdom about the case than the trial judge (on the contrary they may have less); it is instead that a second look by someone else is always to the good. The Bible says, 'in the multitude of counselors there is wisdom.' So the idea is that it is good to have a panel of three judges examine what one judge has done." *Atlanta Coca Cola Bottling Company v. Jones,* 236 Ga. 448, 452–453, 224 S.E.2d 25 (Hall, J., dissenting) (1976).

This presupposes that there is a definitive rule of law in the decisions of the Supreme Court of the United States for both the trial judge and the intermediate appellate judges to follow. Unfortunately, it is a fact that for several years the Supreme Court has, for many reasons, one of which is the magnitude of the court's workload, been unable to perform its traditional task of formulating a body of definitive national law. This is conceded by the Chief Justice and all members of the Supreme Court who have spoken on the subject. Burger, *Annual Report of the State of the Judiciary,* 69 Am.Bar J. 442, 445 (1983). One of our ablest legal scholars has referred to this problem and its result as the "inability of the federal judiciary to render a sufficient number of definitive and clarifying appellate decisions having nationwide binding effect." Meador, *A Comment on the Chief Justice's Proposals,* 69 Am.Bar J. 448 (1983).[3] A distinguished former jurist has pointed out that the problem of the lack of definitive national law is exascerbated by what he calls the "spurious law of the circuit," i.e., the federal law in various regions of the country. He said:

I have not pursued the genealogy of the phrase, because whatever it is, the legitimacy of its present usage is highly suspect. There is no element of sovereignty in a federal judicial circuit.

Schaefer, *Reducing Circuit Conflicts,* 69 Am.Bar J. 452, 453–454 (1983).

Needless to say, there is also no sovereignty in a United States District Court.

The Dean of the Duke Law School has deplored the fact that we have lost sight of the purpose of our circuit courts of appeal:

What tends to be forgotten in this is the historic function of the appeal. In the past little thought was given to judicial law-making. In the 19th century during the decades-long debate over the creation of the United States courts of appeals, there was not a single voice to suggest that those courts were needed to produce more scholarly opinions to illuminate and

---

**1.** "When a prisoner is on death row, his interest, as well as that of the State, demands that judges at all levels expedite their consideration and decision of capitol cases." Justice Powell's comment on the problem of delay before the Eleventh Circuit Judicial Conference. 69 Am.Bar J. 1000 (1983).

**2.** 28 U.S.C. § 2253 provides in pertinent part: An appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a State Court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause.

**3.** In a critical but jocular comment in a speech on habeas death penalty cases before the Eleventh Circuit Judicial conference, Professor Meador called upon the Supreme Court to "get its act together" on this subject and suggested that it would help if the court were assembled and given the "Allen charge."

delineate the national law. There was in fact no hint of an expectation that the new courts would be sources of law. Indeed, for the benighted generation that did at last create those courts, the idea that they might exercise any law-making prerogatives might well have been sufficiently repugnant to cause the whole idea to abort for another half century.

The original purpose was otherwise ... to assure that trial judges and administrative agencies are operating within the limits of the law.

When every judge seeks in every case to emulate the creative career of Learned Hand, there can be no Learned Hands because little that any of them write can be expected to control the behavior and decisions of other judges in the future who claim equal wisdom and equal right to the creative role. However elegant the rhetoric, it becomes increasingly difficult to believe what one reads in the reports.

Carrington, *Ceremony and Realism: Demise of Appellate Procedure,* 66 Am.Bar J. 860, 862 (1980).

Again, it should be noted that Dean Carrington's comments are also applicable to so-called Learned Hands found in the District Courts.

The problem of "regional federal law" is inherent in our court structure. The distinguished former Dean of the Harvard Law School has said that the present organization of our courts of appeal "in large part, facilitates uncertainty in our law, and fosters litigation. This is because the courts of appeals are, for the most part, arranged on a geographical basis ... This is a system which produces conflicts, which proliferates decisions in the law reports, and makes it possible to find authorities to support almost any position that comes into a law office." Griswold, *Helping The Supreme Court by reducing the flow of cases into the Courts of Appeal,* 67 Judicature 58, 65 (1983). One of his proposed solutions is to "have more courts organized on a topical

basis, that is, in accordance with the subject matter of the case. We have three such courts now [United States Court of Military Appeals, Temporary Emergency Court of Appeal and United States Court of Appeals for the Federal Circuit] ... The time has come, I think, when we should have more national courts of appeal with topical jurisdiction." Griswold, at 65 and 66. These are national, as distinguished from regional, courts declaring national as distinguished from regional law. An example of such a court would be a national United States Court of Appeals to review decisions of federal district courts in habeas corpus proceedings. See Griswold, at 66. This type of proposed structure would avoid the present "balkanization" of our national law.

While lamenting the above, this court is well aware of the fact that a decision must be made under our present system on whether or not to grant the certificate of probable cause to appeal this case.

"It is generally agreed that probable cause requires something more than the absence of frivolity, and that the standard is a higher one than the 'good faith' requirement of Section 1915 ... We agree with the weight of opinion in the courts of appeal that a certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right' ... In a capital case, the nature of the penalty is a proper consideration in determining whether to issue a certificate of probable cause, but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate." *Barefoot v. Estelle,* —— U.S. ——, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983).

Has the petitioner made a substantial showing of the denial of a federal right? It is the opinion of this court that he has not. However, can this court say that some judges in the appellate process will not hold a contrary view on the merits of this case? It is well known that there are district judges, circuit judges and Supreme Court justices [4] who have never denied a habeas

---

4. Two members of the Supreme Court of the United States have never voted to deny a habe-

petition in a death penalty case.[5] Since there is no way for this court to know which three judges will review this case, this court cannot say that there are not at least two judges who would resolve these issues other than how this court has.

█ Considering the lack of definitive opinions by the Supreme Court of the United States on the substantive issues in the case (national law), the personal predilections of many federal judges against the imposition of the death penalty, the uncertainty of regional federal law and the unending process of federal habeas corpus, the petitioner's motion for a certificate of probable cause to appeal this order to the circuit court of appeals is GRANTED. The petitioner's motion to proceed *in forma pauperis,* being in proper form, is GRANTED. The motion to stay the execution, now scheduled to be carried out on October 12, 1983, pending appeal by the petitioner to the Court of Appeals is GRANTED.

as petition in a death penalty case. This means that a state must convince five out of the other seven justices in order to prevail in that court.

**5.** While serving in the Georgia Judicial System, this judge participated in 89 cases in which the death penalty was challenged. This judge voted to uphold the sentence in 65 cases and to reverse the sentence in 24 cases.