Ernest MORIN and Ruth Morin

v.

**STATE OF RHODE ISLAND and Providence Plantations and Charles McHugh, Alias, in his capacity as Chief of the Probation and Parole Department of the State of Rhode Island and Providence Plantations.**

**Civ. A. No. 86–0631–T.**

United States District Court,
D. Rhode Island.

July 12, 1990.

John B. Reilly, Warwick, R.I., for petitioners.

Annie Goldberg, Sp. Asst. Atty. Gen., Appellate Division, Providence, R.I., for respondents.

## MEMORANDUM AND ORDER

TORRES, Judge.

This case is before the Court on Ruth Morin's objection to a Magistrate's Report and Recommendation that her petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1] For reasons hereinafter stated, the Court accepts the Magistrate's Report and Recommendation.

## FACTS

On February 1, 1978 the petitioner, her husband and two other family members were convicted in state court of various crimes stemming from a scheme to burn their dwelling in order to obtain the proceeds of insurance on the property. Petitioner's conviction was affirmed by the Rhode Island Supreme Court on December 3, 1980. Petitioner then sought post-conviction relief in the Rhode Island Superior Court claiming that her sixth amendment right to effective assistance of counsel was violated because the same attorney represented all of the defendants. That petition was denied as was a motion for a rehearing. The petitioner then appealed to the Rhode Island Supreme Court which dismissed her appeal and denied a motion for a rehearing.

Petitioner then sought a writ of habeas corpus in this Court, pursuant to 28 U.S.C.

§ 2254, alleging violation of her Sixth Amendment right to effective assistance of counsel. Judge Pettine denied both that petition and a subsequent motion for reconsideration. *Morin v. State of Rhode Island*, C.A. No. 83–0186–P, slip op. (D.R.I. August 5, 1983); *Morin v. State of Rhode Island*, C.A. No. 83–0186–P, slip op. (D.R.I. March 21, 1984). Petitioner's counsel filed a notice of intention to claim an appeal, but there is no indication in the record that any such appeal was perfected.

Some time later, petitioner filed the petition for a writ of habeas corpus that is presently before this Court. That petition has been the subject of two previous Reports and Recommendations to Judge Pettine, both of which were remanded to the magistrate for further consideration due to objections filed by the petitioner. It is the third Report and Recommendation that is now before this Court.

## DISCUSSION

The petitioner advances two arguments in support of her application for habeas relief. The first is a re-assertion of her contention that she was denied effective assistance of counsel during state court trial. The second argument is that she was denied her right of appeal from Judge Pettine's rejection of her previous habeas corpus petition. The Court will consider those arguments, in turn.

1. *Standard of Review*

■■■■ An objection to a Magistrate's recommendation regarding a Rule 12(b)(6) motion to dismiss requires a *de novo* determination by the Court. 28 U.S.C. § 636(b)(1). Such a motion should not be granted "unless it appears beyond doubt that the [petitioner] can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted). In making that determination the petition should be construed in the light most favor-

---

1. Ernest Morin, the petitioner's husband, withdrew his petition for habeas relief on November 30, 1987.

**34**

able to the party against whom the motion is directed. *E.g., Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Every doubt must be resolved in the petitioner's favor, and all well-pleaded allegations of the petition must be accepted as true. *E.g., Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

## 2. *Denial of Effective Assistance During State Court Trial*

■ One of the grounds asserted by Morin in support of her contention that she did not receive effective assistance of counsel during her state court trial is that her attorney also represented the co-defendants. As previously noted, that identical argument was considered and rejected by Judge Pettine in denying Morin's previous habeas petition. Indeed, the petition itself acknowledges that, to that extent, it is nothing more than a regurgitation of the prior petition. *See* Petition for Writ of Habeas Corpus at paras. 11 and 15. Consequently, the argument is clearly frivolous.

The statute governing habeas corpus specifically provides that:

When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States ... release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained ... unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.

28 U.S.C. § 2244(b).

Moreover, Rule 9(b) of the Rules Governing § 2254 Habeas Corpus Proceedings provides that "[a] second or successive petition [for habeas corpus] may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits...."

These provisions have been construed by the Supreme Court to mean that successive applications for habeas relief are subject to dismissal if "(1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application." *Sanders v. United States,* 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963).

In this case, there is absolutely no question that the assertion regarding multiple representation by counsel falls squarely within the prohibition against repetitive petitions. An examination of Judge Pettine's decisions reveals that he thoroughly surveyed the applicable law, carefully considered petitioner's contentions, and meticulously examined the trial record. After having done so, he concluded that the petitioner was not deprived of effective assistance of counsel saying:

> *The Court's own review of the trial record in this case confirms that no actual conflict adversely affected the adequacy of representation.* The four co-defendants [Ernest Morin, Ruth Morin, Robert McCallum and Priscilla McCallum] were all members of the same family. Each testified consistently with the others and the defense presented was a unified one directed at impeaching the credibility of the critical government witnesses. Finally, there is no reason to believe that the defendants would have benefitted by abandoning a common defense and attempting to place blame upon one another.

*Morin v. State of Rhode Island,* C.A. No. 83–0186–P, slip op. at 4 (D.R.I. August 5, 1983).

After conducting a hearing on the petitioner's request for reconsideration and receiving additional memoranda, Judge Pettine reiterated his conclusions saying:

The petitioners' memorandum does not indicate that any of the petitioners, if he or she were separately represented, would have introduced any evidence other than that introduced at trial. There is no hint that exculpatory evidence as to one was not used because it would seal the doom of another.... Moreover, the trial transcript reveals that Mrs. McCallum was the Morins' daughter and that the McCallums and Morins were part of a tightly-knit clan that all lived next to each other.

*Morin,* slip op. at 3 (D.R.I. March 21, 1984).

Petitioner contends that, notwithstanding the foregoing, her assertion of ineffective assistance should be reconsidered because her further review of the trial record suggests the possibility of an entrapment defense that was not explored by trial counsel. That argument is equally frivolous for two reasons. First, the portion of the transcript upon which she relies provides no discernible basis for such a defense.[2]

Second, that contention amounts to no more than a reiteration of the contention that petitioner was denied the effective assistance of counsel. Simply making additional assertions about the ways in which counsel's assistance was allegedly ineffective does not convert it into a new or different claim. *Sanders v. United States,* 373 U.S. 1, 15–17, 83 S.Ct. 1068, 1077–78, 10 L.Ed.2d 148 (1963); *Cunningham v. Estelle,* 536 F.2d 82, 83 (5th Cir.1976) (citing *Sanders v. United States, supra,* at 15–16, 83 S.Ct. at 1077–78) ("appellant cannot raise the same ground here by simply varying the factors that he claims demonstrate incompetency"); 28 U.S.C. § 2244(b); Rule 9 of the Rules Governing § 2254 Habeas Corpus Proceedings. To hold otherwise, would be to make habeas corpus an interminable process which is precisely what Congress sought to avoid in enacting § 2244. *Kuhlmann v. Wilson,* 477 U.S. 436, 450, 106 S.Ct. 2616, 2625, 91 L.Ed.2d 364 (1986) (plurality opinion).

In short, the petitioner has had ample opportunity to assert her claim of ineffective assistance of counsel. In addition, the claim she seeks to assert here is indistin-

---

**2.** Petitioner relies upon a portion of the trial transcript wherein an informant in the case, James Harris, testified as follows:

Q And what did you do as a result of this telephone call from Mr. McCallum asking you to come over to his father-in-law's house and speak to his mother-in-law?
A I got in my automobile and drove to a liquor store on Sandy Bottom Road, I bought a couple of single beers, I drank one, I started to drink the other one and started driving to Mr. Morin's house and I arrived there with a beer bottle in hand.
Q And who was at Mr. Morin's house at this time when you arrived there?
A Mr. Morin, Mr. McCallum, Mrs. Morin and Mrs. McCallum.
Q And where were they when you arrived there?
A They were all sitting in the porch area of the home.
Q And which porch area now are you talking about?
A As you come into the front of the house there was a little porch area, just as you go in, it is on the diagram.
Q Is this the one next to the garage that you are talking about?
A Yes, sir, it separated the garage and the kitchen.
Q And could you tell us what conversation, if any, that you had at this time?
A Mrs. Morin was extremely upset.

Q Mrs. Morin?
A Mrs. Morin, and she was quite nervous. I guess she was just quite nervous as to what was about to happen and I was there basically to reassure her that everything was going to be all right, that this is done every day and that everything is just going to be fine. That is pretty basically what the whole conversation was about. I was there about forty minutes, I believe.
Q Who took part in this conversation?
A Well, we all took part in the conversation. Mrs. McCallum helped me and explained to Mrs. Morin to calm down, that people do this, it has been done and been done and been done forever and it is one way out of a situation and a way into a new situation and not to worry about it, everything was going to be all right.
Q And did Mrs. Morin say anything in response to the reassurance from her daughter?
A Yes, sir. That maybe she shouldn't be so nervous, "I am sure it will be all right and okay" and she seemed to calm down quite a bit.
Q And you say you were there forty minutes at this time?
A Yes, sir.
Q And was there anything else discussed at this time other than Mrs. Morin's nervousness?
A No, sir.
Volume 1 of Trial Transcript at pp. 171–173.

guishable from that which was thoroughly considered and rejected by Judge Pettine. Finally, she has made no "colorable showing of factual innocence" suggesting that reconsideration would serve the ends of justice. *Kuhlmann,* 477 U.S. at 454, 106 S.Ct. at 2627.

### 3. *Denial of Right to Appeal*

■ Morin also asserts that counsel's failure to effect an appeal from Judge Pettine's denial of her previous habeas petition itself constituted ineffective assistance of counsel and deprived her of some perceived constitutional right to appeal that determination. This argument also borders on the frivolous for two reasons.

■ First, there is no "right," constitutional or otherwise, to appeal the denial of a petition for a writ of habeas corpus. *Solomon v. Kemp,* 572 F.Supp. 233, 234 (N.D.Ga.1983). Such appeals are governed by 28 U.S.C. § 2253 which makes a certificate of probable cause issued by the court a prerequisite for an appeal. Thus, the statute provides that an appeal "may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a State court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause." The cases make it clear that a petitioner is not entitled to such a certificate as a matter of right. *Jones v. Warden, Louisiana State Penitentiary,* 402 F.2d 776 (5th Cir.1968) (per curiam); *Gordon v. Willis,* 516 F.Supp. 911, 912 (N.D.Ga.1980). Rather, the determination as to whether a certificate of probable cause should be issued is a matter within the Court's discretion. *Stewart v. Beto,* 454 F.2d 268, 269–70 (5th Cir. 1971), *cert. denied,* 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972); *Wilks v. Young,* 586 F.Supp. 413, 415 (E.D.Wis. 1984).

■ Second, the Sixth Amendment's guarantee of effective assistance of counsel does not extend to habeas corpus proceedings. *Knaubert v. Goldsmith,* 791 F.2d 722, 728 (9th Cir.), *cert. denied,* 479 U.S. 867, 107 S.Ct. 228, 93 L.Ed.2d 155 (1986). Effective assistance of counsel is a constitutional right only in those circumstances where there is a constitutional right to counsel. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Wainwright v. Torna,* 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301–02, 71 L.Ed.2d 475 (1982) (per curiam). The Constitution entitles a criminal defendant to representation at the trial and sentencing stages and through the first appeal to which he has a right. However, it does not mandate representation during subsequent proceedings. *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). Nor does the habeas statute confer any "right" to counsel. On the contrary, the statute in effect when Morin's petition was pending made it clear that the appointment of counsel was discretionary. It provided that a district court *may* appoint counsel to represent a habeas petitioner when "the court determines that the interest of justice so require[s]. . . ." 18 U.S.C. § 3006A(g). Since Morin had no constitutional right to counsel during the prior habeas proceeding, her counsel's failure to perfect an appeal cannot be deemed a denial of her Sixth Amendment right to effective assistance of counsel. *Wainwright,* 455 U.S. at 587–88, 102 S.Ct. at 1301–02.

### ORDER

For all of the foregoing reasons, the Magistrate's Report and Recommendation is accepted, and Ruth Morin's Petition for a Writ of Habeas Corpus is hereby denied.

IT IS SO ORDERED.